The 4th District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our first case of the morning, 425-0894, People of the State of Illinois v. Anthony Love. Would counsel for the appellant please state your name? My name is Elizabeth Cook. Thank you. And for the appellee? Timothy J. Londrigan. Very good. You may proceed, Ms. Cook. Good morning, your honors. Good morning, counsel. I'm sorry. Let me explain. Justice Vansel, the third member of this panel, his building has been evacuated, his office building. He doesn't have power. He can't get internet on his phone. He may be sitting in a McDonald's parking lot somewhere, but is unable to contact us, but has indicated he will, of course, listen to the recording of the oral argument and will participate in the decision of this case. You may proceed. Thank you, your honor. Good morning, your honors. Good morning, counsel. May it please the court. My name is Elizabeth Cook and I'm from the Office of the State Appellate Defender on behalf of the appellant, Mr. Anthony Love. Your honors, I would like to quickly address the first argument in my brief before turning to our request for a new trial on two separate bases. The state has conceded that the evidence in this case does not support either count of predatory criminal sexual assault of a child where there was no evidence that Love's hand made skin-to-skin contact with Beazley's vagina. The state therefore agrees that his two PCSA convictions should be reduced to the lesser included offense of aggravated criminal sexual abuse. For the same reason, the state also agrees that this case should be remanded for resentencing, which was the fourth argument raised in my brief. Regarding this lesser included offense, there is some ambiguity about which subsection should apply on remand. The state's brief cites to various subsections of 11-1.60, the ACSAB statute, including subsection F. All forms of ACSAB are class II felonies except for subsection F, which is a class I felony. Subsection F requires the state to prove an act of sexual conduct between a victim who is under 18 years of age by a person who holds a position of trust, authority, or supervision in relation to the victim. This element of holding a position of trust, authority, or supervision over the victim was not an element of PCSA as charged in this case, and thus that element was never put before a jury for proof beyond a reasonable doubt. Therefore, reducing the PCSA counts in this case to the class I version of the offense would be an apprendi violation because it would increase the maximum penalty from the class II sentencing range to the class I sentencing range. We instead ask that this court should reduce these convictions to the class II version of the offense, which is truly the   C-1 of the ACSAB statute are included and only requires proof of sexual conduct with a victim who is under 13 years of age, which is subsection C-1 of the ACSAB statute. If this court has no questions on this first argument, I would like to turn next to the third issue raised in my briefs. Would you be willing to concede that the state could have, if the charging instrument had been expanded, could probably have covered all of the categories or all of the subsections? Of ACSAB, your honor? Yes. The state, you know, certainly could have attempted, you know, could have charged that and attempted to obtain a verdict on that count, but that was never, that element was never charged in the indictment in this case. Understood. You may proceed. Thank you. The trial court denied Anthony Love a fair trial by allowing the state to present evidence of sexually charged text messages between himself and his ex-wife, Amanda, where the messages were not relevant and their prejudicial impact outweighed any probative value. These messages were both irrelevant and highly prejudicial, where they showed Love discussing an adult female sex partner in crude, blunt language that could have easily offended sensitive jurors and prejudiced them against him. In addition, the messages contain references to Love's mental health struggles and treatment, which could have caused jurors to view him as unreliable or unstable. As a threshold matter, these messages were simply not relevant to the charged offense. The only nexus between them was that the messages were sent on the same night that the alleged touching occurred, but still about two hours before BZ entered Love's bedroom. Therefore, these messages did not establish the timeline of the offense, where both BZ and Love testified that she came into his bedroom unable to sleep well after midnight. Even the trial court stated that if the messages had not been sent on the night of the offense, they would not be admitted. The state offered these messages on the issue of Love's intent to commit the offense, and the state relied heavily on the messages to support its theory of the case. In closing argument, the state argued that the messages show that Love was sexually aroused while he had kids in his care. The state told the jury that these, quote, raunchy text messages show that was trying to hook up with somebody, and that's where his mindset is. This argument assumes that there is some connection between an adult desiring to have sex with another consulting adult and the sexual abuse of a child. Ms. Cook, the trial court did keep some of the text messaging out, correct? Correct. Yes, your honor. Seem to have engaged in a fairly thorough analysis of what to let in, what to not let in. Could you just focus on the intent portion of it? Because what was allowed in, it certainly didn't describe a crime, so that would lessen the prejudicial impact there. Maybe just not savory conduct, but if you could just address the notion that it was to intent. Thank you, your honor. I agree. I don't think that these messages were at all relevant on the issue of intent. I don't think that the jury should have been invited as they were to draw a logical inference between his desire to have sex with an adult woman and the potential sexual abuse of a child. It would be normal for two parents to talk about sex together while their in another bedroom, and that's essentially all that was going on in these text messages. And in addition, the evidence of Love's mental health was not at all relevant to the issue of intent, which is how the state offered these texts under Rule 404B. The fact that Love was regularly seeing a mental health professional did not relate even remotely to the charged offense. And in addition, even relevant evidence may be excluded if its prohibitive value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. In this case, the text messages contain numerous unfairly prejudicial statements. The statements show Love describing a desire to have sex with a woman in crude, blunt terms, calling her a couch pisser, and stating that she's not that great. The introduction of these messages also opened up the door for Amanda to testify that this woman was someone Love had met up with once or twice before for sex, but was not in a relationship with. Any jurors sensitive to crude, sexualized language about women or who object to casual sex on moral grounds, these texts would have been very offensive and enough to prejudice them against Love, to the point that they may have doubted his credibility on the stand. Even worse, the texts contain the mention of Love saying, I need help and seeing a psychiatrist, which is highly prejudicial, especially in a trial that comes down to a credibility contest. This allusion to his mental health treatment could cause jurors to immediately mistrust him or believe that he was always unstable or out of control. These messages were unduly prejudicial because they cast a negative light on Love for reasons having nothing to do with the case, and invited the jury to decide the case on an improper basis, such as contempt or disgust. Because this error was preserved, the burden is on the state to show that the error was harmless. That means the state must prove that the verdict would have been the same had the improper evidence been excluded. Where Love testified that these incidents did not happen, the case came down to a credibility contest between himself and BZ. Therefore, anything that called his integrity into question in the eyes of the jury was prejudicial to his defense. On this issue, we asked the court remand this case for a new trial with instructions that the state cannot seek to bring PCSA charges again, but must proceed only on the lesser included offense of Class II ACSAB. If this court has no other questions on this issue, I'd like to turn to my second argument for a new trial. The trial court erred in admitting the secretly recorded phone calls between Anthony Love and Amanda, which violated the Illinois Constitution. The so-called fear of crime exception to the eavesdropping statute. As an initial matter, the eavesdropping statute defines a felony offense, not a rule of evidence. This fear of crime exception is an exception to criminal prosecution under the statute. It does not necessarily mean that any such evidence is relevant, reliable, or even admissible at an trial. The critical issue here is that Amanda must have had reason to believe that evidence of the criminal offense may be obtained by the recording. In this case, that requirement has not been satisfied. The state's evidence does not show that Amanda started recording her phone calls with Love because she believed she would obtain evidence of a criminal offense by doing so. To the contrary, Amanda testified that after she reported BZ's outcry to DCFS, she was concerned that Love would find out who made the report. She continued to pretend when she was speaking with him that she had no idea what was going on and that everything was fine, in the hopes that the police would arrest him before he found out that she had called DCFS. When asked if she attempted to steer Love away from suspecting that BZ was the source of the disclosure, Amanda said that she did because she wanted to see how he would react to different possibilities. Thus, she was not attempting to elicit information about what she believed actually happened. Amanda never provided a cogent explanation of what her intention was with the recordings. When she was asked at trial, when did you start recording your phone calls? She responded, truthfully, I decided to start recording the phone calls once he started talking on the phone with the phone conversation that we were having that evening and I heard what he was and I knew other people needed to hear it too. Thus, she never articulated any particular purpose with the phone recordings. Well, didn't she say that she recorded because he was discussing the allegations made by DCFS? She did not provide an explanation of what the purpose of the recording was, your honor. Okay, so she didn't say that? I don't believe so, your honor. Okay, go ahead. The recordings do not contain any admissions by Love, meaning that no evidence of a criminal offense was obtained. Although Love did not admit to any wrongdoing during the calls, the admission of the phone calls was unduly prejudicial and thus this error was not harmless. The calls revealed Love's feelings of anger, anxiety, and vulnerability, which the jury could have interpreted as signs of guilt rather than a normal parental reaction to the prospect of an unfounded abuse allegation. His expression of anger at the prospect of an abuse allegation and threat to cut off contact with the child who made it could have also prejudiced the jury against him. And like the text messages, these phone calls contain references to Love's mental health treatment, which is highly prejudicial. Love's statement that he had been off his medication for four days and experiencing paranoia could have been negatively construed by the jury. Where the content of the conversations could have damaged Love's likability and credibility in the eyes of the jurors, this admission was not harmless. The state also relied on these phone calls during its closing argument. The state argued that when Love told Amanda to check for messages on BZ's phone from Saturday night, this indicated his consciousness of guilt. And this is Again, on this issue, we ask that this court remand this case for a new trial, with instructions that the state cannot seek to bring PCSA charges again, but proceed only on the lesser included offense of Class 2 ACSAB. Even if this court declines to grant the relief of a new trial, we ask that this court reduce Mr. Love's two convictions for predatory criminal sexual assault to Class 2 aggravated criminal sexual abuse and remand for recensing. I see no questions. You'll have time on rebuttal. Have you concluded your argument? Yes, I've concluded. Thank you, Your Honor. Thank you. Mr. Londergan. Good morning, Your Honors. May it please the court. With regard to issue one, I was not expecting the issue that was raised by opposing counsel here this morning. I didn't actually realize that the section that I quoted with regard to F was a Class 1 and not a Class 2. So I really don't have a response to that. I think the issue that she discusses is probably appropriate, but I haven't researched it, so I won't delve deeper into that. With regard to issues two and three, I think I can pretty much stand on my brief on disagree with her interpretation of the evidence that was presented at trial. With regard to issue three, whether or not the text statement should have been admitted, I think she has to establish or defendant has to establish rather that it was an abuse of the court's discretion to allow this evidence. Of course, this evidence is going to have some negative effect upon defendant. That's why it was sought to be introduced in the first place. All evidence is going to have some prejudicial impact or it's not relevant. I think the evidence is clear that this was relevant. The purpose for it is obvious. The jurors are going to have a natural inclination to question how could this have happened? Why did this happen? Evidence that the defendant was in a heightened state of sexual desire I think is particularly relevant. It's very close in time and it helps explain why perhaps this situation could have come about. With regard to issue two, why were these recordings admitted? It's a clear exception. The statute makes a fairly clear exception that if, and it's a subjective intent I believe, if the person making the recording believes that they're doing so for the purpose of discovering a criminal act or criminal offense, then that's an exception. Clearly applies in this instance. I believe the testimony was very clear that the lady that taped these conversations did so under a fear of defendant and under the belief that he was going to say something which would relate to a particular offense having been committed. I think this court is perfectly capable of looking at the record and making up its own mind, but I think on both issue two and three it's pretty clear. With regard to issue one and four, yeah, I think the defendant is right. I think this matter has to be sent back down to re-sentencing. Thank you, Mr. Londrigan. Any rebuttal, Ms. Cook? Yes, just very quickly, your honor. I wanted to correct my misstatement in my opening argument. I look back at the record and the question was asked of Amanda during trial. Can you tell everyone what you did at that point? She says, I recorded phone conversations between Anthony and myself where he was discussing the allegations made by DCFS. Well, he didn't know that I made. Your honor, she was then asked if she did this at the direction of law enforcement. She says that she did not. She did it on her own initiative. Despite this testimony, though, your honor, I would still argue that these messages were unduly prejudicial, particularly as they discussed his mental health treatment and the fact that he had been off his days and becoming paranoid. If there are no other questions, your honor, that concludes my rebuttal. Thank you. Somebody said brevity is the soul of wit. You've both been brief today and to the point. Thank you for your arguments and we'll take the matter under advisement.